PHŒNIX INSURANCE COMPANY *v.* SCHWARTZ.

115   113
e130   732

1. A clause in a policy of fire-insurance requiring the assured to keep the books and inventories of his business "securely locked in a fire-proof safe at night, and at all times when the building [in which the stock insured is located] is not actually open for business; or, failing in this," to "keep such books and inventories in some place not exposed to a fire which would destroy the . . building," does not apply to a suspension of business caused by such an emergency as a fire raging in the vicinity and threatening the consumption of the building, the same not being actually shut up, and business operations being interrupted because of the threatened danger.  Under such circumstances the clause in question does require the insured to exercise reasonable diligence to preserve the books and inventories.

2. Defects in a motion for a new trial, caused by the failure to properly assign error upon the rulings of which complaint is made, can not be cured by setting out in the bill of exceptions the various grounds of the motion and specifically assigning error upon the overruling of each ground.

3. Under the ruling of this court in *Phenix Ins. Co.* v. *Hart*, 112 *Ga.* 765, section 2140 of the Civil Code, which authorizes the plaintiff in an action upon a policy of insurance to recover, under certain conditions, damages and attorney's fees is unconstitutional.

Submitted March 1, — Decided April 2, 1902.

Action on insurance policy.   Before Judge Eve.   City court of Richmond county.   January 23, 1901.

Counsel cited, as to "iron-safe clause": 98 *Ga.* 754; 111 *Ga.* 622; 94 Fed. 314; 65 Ark. 240, s. c. 45 S. W. Rep. 539; 51 L. R. A. 702; 38 Fed. 19.

*M. P. Carroll,* for plaintiff in error.

*J. R. Lamar* and *C. Henry Cohen,* contra.

FISH, J.   A policy of insurance, issued by the Phœnix Insurance Company, of Hartford, Conn., to Mrs. E. A. Schwartz, upon her stock of goods and merchandise, contained, among others, the following provisions :  "The following covenant and warranty is hereby made a part of this policy.   1st.  The assured will take a complete itemized inventory of stock on hand at least once in each calendar year ; and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date. .  . 2nd.  The assured shall keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases,

8

sales, and shipments, both, for cash and credit, from date of inventory, as provided for in the first section of this clause, and during the continuance of this policy.  3rd. The assured will keep such books and inventory, and also the last and preceding inventories, if such have been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured shall keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.  In the event of failure to present such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon." Mrs. Schwartz's store was consumed by a fire which originated during business hours in another store on the same block.  Her books and inventory were destroyed by the fire. They were not in the safe, but had been tied up in a bundle in anticipation of the possibility that the fire might spread to that store, and placed near the door so that they might be removed in case of danger.  The company refused to pay the policy, on the ground of the failure of the assured to produce her books of account and inventories in accordance with the terms of the contract of insurance, and upon the further ground of non-compliance with the "iron-safe" clause of the policy, the provisions of which we have quoted. Mrs. Schwartz thereupon brought suit for the amount of the policy, together with damages and attorney's fees.   The defendant demurred to so much of the petition as sought to recover damages and attorney's fees.   This demurrer was overruled, and the case proceeded to trial, resulting in a verdict for the plaintiff for the full amount sued for, including $625 damages for bad faith on the part of the defendant company in refusing to pay the policy, and $500 as attorney's fees; whereupon the defendant made a motion for a new trial, which the court refused.   To the overruling of its demurrer, and to the refusal of the court to grant a new trial, the insurance company excepted.

1. The proper determination of the issues involved in the case before us depends largely upon the construction to be placed upon what is known as the "iron-safe" clause in the policy of insurance. It seems clear from the record that the plaintiff below had in her store at the time of the fire an iron safe, which was open, and into

which the books and other records of the business could easily have been placed; that upon the approach of the fire, however, they were not placed in the safe, but were tied in a bundle and put conveniently at hand so that they might be removed from the building in the event that the conflagration, which was then some distance away, should seem to threaten the safety of the store; that the fire spread much more rapidly than was expected, with the result that a wall of the building in which the plaintiff's store was located fell in, destroying her entire stock of merchandise; and that the books and inventory were not removed, but were destroyed with the building. It was the contention of counsel for the insurance company, as disclosed by their brief and the written requests for instructions to the jury, that upon the approach of the fire the plaintiff's store was no longer "open for business" within the meaning of the iron-safe clause of the policy; that it thereupon became the duty of the plaintiff to promptly place the books (which, up to that time, had been in use) in the safe, and that her failure to do this, resulting in her inability to produce the books and inventory for the inspection of the company, was a bar to her right to recover on the policy. We can not, however, concede that this is a fair construction of the iron-safe clause. It is plain that on all ordinary occasions when her store was not open for business, such, for instance, as Sundays, holidays, and after the store had closed at night, the plaintiff was required by the clause in question to do one of two things: she must either have kept the books and inventories in her safe at the store, or else have removed them to some place where they would not be exposed to danger from fire. The clear intent of the clause is to guard against the possible destruction of these records during the absence from the store of those whose duty it was to look after them, and to that end it was provided that if the books were to be left in the store at night and on other occasions when business was not being transacted, they must be kept in an iron safe, which, presumably, was the most secure place for them *in the store.* But we see no warrant for the construction that this clause was intended to apply to occasions of actual impending danger from fire; nor are we aware of any rule for determining just when, under circumstances such as are disclosed by the record now under consideration, a store ceases to be "open for business." The fire took place during business hours, and it does not appear

that.the premises were ever actually closed. It was a time of great and sudden emergency, and as a matter of fact it is conceivable that the books might have been in greater danger from destruction, under the circumstances, in the iron safe than if removed to some place outside the store. Applied to the peculiar circumstances of the present case, we think that a fair interpretation of the iron-safe clause would be as follows : The insured was required to preserve, and in case of fire to produce, her books of account and inventories, the preservation of. them being solely for the purpose of enabling her to produce them when required. On all ordinary occasions when the store was not open for business, certain hard and fast rules were laid down to insure their preservation. In cases of sudden emergency, the insured must exercise all reasonable diligence to effect the main end of the iron-safe clause, viz., to put the books in a place of safety, so that they could be produced for the inspection of the company's agents after the fire. Whether such diligence required the placing of the books in the iron safe, or their removal from the building, and whether, in the present case, the plaintiff used such diligence, were questions of fact to be determined by the jury. See Liverpool Ins. Co. *v.* Kearney (Ind. Ter.), 27 Ins. L. Jour. 873 ; East Tex. Fire Ins. Co. *v.* Harris (Civ. App. Tex.), 23 Ins. L. Jour. 552.

2. Certain grounds of the motion for a new trial complain of portions of the judge's charge, and of various rulings upon the admission of evidence, but do not point out in what the alleged error consisted. Apparently, counsel for the plaintiff in error attempted to cure this defect in the motion by incorporating these grounds in the bill of exceptions and there specifically assigning error on each ; but, under the ruling of this court in *Hill* v. *State,* 112 *Ga.* 32 (2), and the cases there cited, these assignments of error can not now be considered.

3. Under the ruling of this court in the case of *Phenix Ins. Co.* v. *Hart,* 112 *Ga.* 765, it is clear that the court erred in overruling the demurrer to so much of the plaintiff's petition as sought to recover damages and attorney's fees under the Civil Code, § 2140. We accordingly reverse the judgment of the court below. Upon another hearing, it should be tried upon the line indicated in the first division of this opinion.

*Judgment reversed. All the Justices concurring, except Little and Lewis, JJ., absent.*