Studer, administrator, *vs.* Seyer.

Specific performance will be decreed in cases of contract founded upon a valuable consideration, whenever it would be a fraud upon the party seeking it to refuse it, but a court of equity will not decree specific performance of a voluntary agreement or gratuitous promise, except where possession of land has been given under such agreement upon a meritorious consideration, and valuable improvements have been made upon the faith thereof.

(*a.*) A man and wife, leaving a region infested with yellow fever, went to the house of his brother-in-law. While there, the husband remarked to the wife of his entertainer that he (the speaker) might be taken sick, and if so, he desired to remain at the house of his host, and that he was willing to pay the latter well. When this was mentioned to the host, he replied that his brother-in-law could remain there if he was sick, that those who did not want to come

could stay out, and those who did not want to stay could go.    No other conversation took place.    The visitor and his wife were both attacked by yellow fever, and the latter died.    After the convalescence of the former, he expressed himself as extremely grateful to his host and hostess, who had nursed him and saved his life.    He stated that they had done much for him, and that he would do something for them, that he would make a will and leave them all his property.    Subsequently he executed an instrument bequeathing his property to them, and delivered the paper to them.    It was not a valid will :

*Held,* that under these facts no such contract was shown as would authorize a decree for specific performance against his administrator after his death, requiring the delivery of the estate to the holders of this instrument.    A contract upon which specific performance is sought must be certain, definite and clear, and so precise in its terms that neither party can reasonably misunderstand it.

(*b.*) The allegations of the bill in regard to the value of services performed, the amount of expenses incurred, or the losses sustained by complainants in nursing the intestate, are too vague and uncertain to form a basis for recovery.    Nor is the evidence on those points sufficient to warrant a verdict for the entire estate.

February 6th, 1883.

Wills.   Contracts.   Specific Performance.   Equity.   Before JOHN M. GUERRARD, Esq., Judge *pro hac vice.* Chatham Superior Court.   June Term, 1882.

Reported in the decision.

W. GRAYSON MANN; S. YATES LEVY; W. D. HARDEN; R. R. RICHARDS, for plaintiff in error.

DENMARK & ADAMS, for defendant.

CRAWFORD, Justice.

Franz X. Bingel, a citizen of Georgia, died at Savannah in July, 1879; the plaintiff in error was appointed his administrator, and possessed himself of his estate.    Frederick Seyer, a citizen of New Jersey, offered for probate in that state a paper writing purporting to be the last will

and testament of the said Bingel, which was probated and admitted to record. By this will the said Seyer was the sole legatee, and this suit was brought to recover the whole estate from the administrator, upon the grounds specifically set out in complainant's bill of complaint.

He alleges that the paper writing, though not good as a will in this state, was nevertheless made upon good and valuable consideration, and in recompense, discharge and payment for valuable services rendered by the complainant and his wife to Bingel and his wife, and that the said Bingel meant that the said paper writing should be irrevocable, and in the nature of a deed conveying a fee simple interest in the property conveyed, subject only to a life estate of the said Bingel therein; that the services rendered by him and his wife to Bingel and his wife were at his house, where they had gone on account of the yellow fever in the city of Savannah; that after their arrival the said Bingel was taken sick with the fever, and as he was convalescing his wife was taken and soon thereafter died; that during their entire illness they received the constant care and attention of himself and wife; that his business was broken up; that in addition to the devoting of their whole time to the care of the said Bingel and wife, and the loss of their said business, that he laid out and expended his earnings and money for food, fuel, medicine and other necessaries for them whilst they were so in his house; that his wife, in consequence of the trouble, over-work and grief attendant upon the sickness of the said Bingel and his wife, who was her sister, has never recovered from the shock which her system then received. He further alleges that the said Bingel after his convalescence expressed his gratitude to them, and said that whilst he could never repay the kindness which he had received, yet he would do all in his power to do so, and in pursuance of that promise, he made and delivered the writing named, and he, the complainant, submits to the court that in law it was an equitable transfer of the whole estate of

the said Bingel to him in payment for the services and benefits derived to the said Bingel and his wife, subject only to his life estate therein.   But even if this be not so, he then avers that the said Bingel was at the time of his death legally due and owing to him for the said services and benefits the sum of $6,000.00 upon a fair and reasonable estimate of their value.

The prayer of the bill is that the defendant discover under oath all such matters and things as he may know, or be informed of, going to show and establish the claim of the said Seyer to the whole estate, or such part of it as he may be lawfully entitled to.   He further prays that the court shall so construe and reform the said writing as to have it speak the true intent and meaning of the said Bingel, and so as to vest in him the title to, and possession of, the property therein designated.   And if the writing cannot be so construed, by reason of the stringent and technical rules of law, that the court will proceed and decree to complainant the amount, with interests and costs, that may be reasonably and fairly due him from the estate upon an account for his services and expenses and losses, as they have been set forth in his said bill.

The defendant by answer, denies all knowledge of the matters and things set forth in complainant's bill, but from information and belief, admits that his intestate did make a certain will, void by the laws of Georgia, as set forth in his bill, but for what purpose or object, or upon what consideration, if any, he has no knowledge.   He further answers upon information and belief that the wife of the intestate and complainant were sisters, and that the services and attentions which were rendered were given on account of natural love and affection, but if entitled to be paid for at all, are not worth anything like the amount claimed.   He denies that the will was ever intended to convey any present estate, and prays the judgment of the court thereon, and further submits that all and singular the matters of relief sought by the com-

plainant's bill, are not manifested or proved by any writing, and are within the statute of frauds and perjuries, which he sets up and pleads in bar of the relief sought by said bill.

At the hearing and before the empanelling of the jury to try the cause, the defendant moved the court to dismiss the bill of complainant upon the grounds:

(1.) That no cause of action is set out in said bill.

(2.) That there is no equity in said bill.

The motion was overruled and the trial proceeded. After the complainant had closed his testimony, the defendant again moved the court to dismiss the complainant's suit, upon the ground that there was no equity in the case as made out by the bill and answer and evidence thereunder, which motion the court overruled, and the case, after further testimony offered by defendant, was given to the jury, and under the charge of the court, the following verdict was returned: "We, the jury, find for the complainant the whole estate."

A motion was made for a new trial upon grounds numbering from one to seventy-three, specifically set out therein, and upon each one of which, as well as upon numerous other grounds of exception taken *pendente lite*, it was claimed that a new trial should be granted, but it was refused by the court, and the defendant excepted.

Taking the view of the case which we do, it is deemed wholly unnecessary to enquire into the many errors assigned, but to pass on those alone which must control and dispose of the issue presented by the record. Whether or not the court should have sustained the motion to dismiss on the grounds first taken, it undoubtedly should have done so when the complainant had submitted his testimony, and the motion was renewed.

This bill was filed to recover of the administrator of F. X. Bingel, the entire estate of his intestate, upon the grounds stated by complainant in his bill; and the question is, does he set out such a cause of action, even if proved, as to

entitle him to a recovery? It is admitted by the bill that the paper writing purporting to be a will is utterly void and of no effect as a conveyance, but it is sought to use it as evidence to establish the existence of a contract, of which it was a part, and by which the deceased agreed, in consideration of the services and benefits rendered him by the complainant, to convey to him his entire estate, reserving to himself only a life interest therein. And upon this establishment of such contract, and the proof that the complainant had fully executed and performed his part thereof, then there should be a specific perform-ance decreed by the court upon the part of the adminis-trator of the deceased, and the whole estate conveyed to him in pursuance of the said contract. Conceding that such a contract could be enforced at all, it is nowhere alleged that any such was ever made, or indeed that a contract of any sort was actually made, by which the said intestate was to pay any given amount, much less his whole estate for the services rendered. The strongest allegation in complainant's bill is "that after the conva-lescence of said Bingel, he often conversed with your orator and his wife, and always expressed himself as being extremely grateful for the care and attention bestowed upon himself and wife, saying that your orator and Mrs. Seyer had saved his life, and that while he could never adequately repay them for their great kindness and ser-vice, yet that he would do all in his power toward it, and in pursuance of this promise did make and deliver to your orator the writing hereinbefore referred to."

Even here, it is distinctly stated that the paper was not given in pursuance of any contract, but in pursuance of a promise, evidently growing out of that extreme gratitude for the care and attention which had been bestowed upon himself and wife by the complainant and his wife. A contract upon which a specific performance is sought must be certain, definite and clear, and so precise in its terms as that neither party can reasonably misunderstand them.

Studer, administrator, *vs.* Seyer.

Even where a contract is set forth, if it be vague and un-
certain, or the evidence to establish it be insufficient, a
court of equity will not interfere to grant relief.   How
very certain then it must be, that courts of equity will not
interfere where no definite contract is alleged, and where
too one of the parties to the transaction is dead, and can
bring no proof with which to confront his adversary.

   Passing, however, from the pleading to the proof, we find
that the intestate and complainant had married sisters;
that the former with his wife had gone as guests to the
house of the latter, and whilst there both had fever, and
of which the wife died; before either was sick the intes-
tate said to the wife of complainant that he might be
taken sick, and if he were, he desired to stay at complain-
ant's house, and for which he was willing to pay him well,
to which complainant, when it was mentioned to him, re-
plied that he could stay there if he were sick, and those
who did not want to come could stay out, and those who
did not want to stay could go.   No other or further con-
versation appears to have been had upon the subject, until
about the time the intestate had recovered, when he said
that they had done a great deal for him and that he would
do something for them,—"I will make a will and leave you
all my property."   Not a word, says complainant's wife,
had ever been said to the intestate by herself, or husband,
to her knowledge, about recompense for their trouble
previous to this.   The will contains no words indicating
anything but an ordinary influence operating upon the
maker: " I give and bequeath unto my dear friend and
brother-in-law, etc."   To the scrivener he said that he
wished to leave all his property to the complainant and
his wife, as he had no nearer and dearer friends than they.
" He said nothing to me about a deed."   The complain-
ant had no knowledge of the will, until it was read to him
by another, soon after the departure of the intestate from
his house.   Indeed, every word and circumstance con-
nected with this whole affair put it beyond all doubt

that the execution of this paper was but the free and voluntary act of the intestate, influenced alone by a sense of gratitude felt at the time, and not from any contract, bargain, or obligation entered into by the parties, and by which he was bound to have executed it.

Admitting to the fullest extent that upon the execution of the paper it was the most earnest wish and desire of the intestate to have given to the complainant his entire estate, a court of equity cannot lay its hands upon such a fact, with all others herein established, and decree a specific performance of so invalid a paper, how strongly soever it may have been desired by the person making it at the time of its execution. The absence of all those material elements which are necessary to decree a specific performance makes it simply impossible for a court of equity to entertain a bill for such a purpose in such a case. A specific performance will be decreed in cases of contract founded upon a valuable consideration whenever it would be a fraud upon the party seeking it to refuse it; but a court of equity will not decree specific performance of a voluntary agreement or gratuitous promise, except where possession of lands has been given under such agreement upon a meritorious consideration, and valuable improvements made upon the faith thereof. Code §3189. And it is this principle which distinguishes the present case from *Maddox et al. vs. Rowe*, 23 *Ga.*, 431 ; and *Russell, adm'r, et al. vs. Switzer*, 63 *Ga.*, 711.

Nor do we think that the chancellor should have retained the case for further hearing, or consideration by the jury, upon the allegations, and prayer for an alternative decree for $6,000 in payment of the services and benefits to the said intestate by the complainant and his wife.

An examination of the bill fails to show such definite allegations of the value of the services performed, the amount of the expenses incurred, or the losses sustained to authorize a court of equity to consider and adjudicate

the same. The claim for services rendered is vague and uncertain; that for expenses is without an item; and that for the losses sustained is without specification. Had the pleadings, however, been technically accurate, the testimony was insufficient to warrant the verdict for the whole estate of the deceased as rendered by the jury.

Judgment reversed.